UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL M. GAFFNEY,<br>*Plaintiff*,<br>v.<br>BREWSTER CENTRAL SCHOOL DISTRICT,<br>*Defendant*. | No. 24-CV-9497 (KMK)<br><br>OPINION & ORDER |

Appearances:

Michael Patrick Hilferty, Esq.
White, Rose & Hilferty, PC
New York, NY
*Counsel for Plaintiff*

Tuba Farooqui, Esq.
White Plains, NY
*Counsel for Plaintiff*

Gerald Stephen Smith, Jr., Esq.
Silverman and Associates
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Daniel M. Gaffney ("Plaintiff") brings this Action against the Brewster Central School District ("Defendant"), alleging discrimination on the basis of age, sex, and disability and seeking relief under Title VII of the Civil Rights Act of 1964 (42 USC § 2000-e) ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., 29 USC § 623, et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290. et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. (*See generally* Second Am. Compl. ("SAC") (Dkt. No.

21).) Before the Court is Defendant's Motion To Dismiss the SAC. (*See* Def.'s Mot. To Dismiss (Dkt. No. 28).) For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

# I. Background

## A. Factual Background

The following facts are taken from Plaintiff's Complaint and are assumed to be true for purposes of resolving the instant Motion.

Plaintiff was employed by Defendant as a music teacher from October 1995 until December 7, 2023. (SAC ¶¶ 12, 46.) Plaintiff is a 60-year-old male diagnosed with Parkinson's Disease. (*Id.* ¶ 11.)

### 1. Pre-October 20, 2022 Alleged Incidents of Discrimination and Retaliation

On December 3, 2019, the school's Performing Arts Coordinator Patricia Taylor ("Taylor"), a younger female teacher, failed to provide Plaintiff with a job posting for a high school band position. (*Id.* ¶ 14.) When asked why the posting was withheld from him, Taylor said Plaintiff was "too old" and she preferred a teacher with "more energy." (*Id.*) She said position had been given to a younger teacher in his twenties.

On November 25, 2020, Plaintiff asked Taylor for information about a mentorship position for a new music teacher. (*Id.* ¶ 15.) Taylor ignored Plaintiff's request and subsequently emailed him that a younger female teacher was having her paperwork processed for this position. (*Id.*) After Plaintiff told another older, male teacher about this issue, that teacher met with the school principal about the problem, leading the administration to reopen the position. (*Id.*)

In May 2021, Plaintiff returned to teaching in-person after working remotely under ADA COVID-19 accommodations. (*Id.* ¶ 16.) Upon his return, Christian Hernandez ("Hernandez"),

who was at that time the Vice Principal of the school, expressed her surprise that "someone like [Plaintiff]" had energy to do his job, and noted that he had "a little hop in his step." (*Id.*) On June 11, 2021, Taylor emailed Plaintiff, copying the school's entire music department, stating that she assumed Plaintiff would now be working full-time since he had returned to in-person teaching and that seniority would no longer factor into departmental decisions. (*Id.* ¶ 17.) This email ignored the fact that Plaintiff had been working full time when he was remote. (*Id.*)

In August 2021, the school principal at the time, John Clark, advised Plaintiff that Taylor opposed his promotion to a band position in favor of a first-year untenured teacher in their twenties. (*Id.* ¶ 18.) On August 31, 2021, Hernandez, who had recently become the school principal, removed Plaintiff from the hiring committee, the stipend curriculum committee, and as the intermediary between the music department and the administration. (*Id.* ¶ 19.) For the committee positions, she replaced Plaintiff with Kelsey Beyer ("Beyer"), a female first-year teacher in her twenties, and Terence Nolan, a newly hired teacher in his twenties. (*Id.*) Hernandez also appointed Beyer to the newly-created Music Department Liaison position without offering Plaintiff the chance to apply. (*Id.*) Plaintiff attempted to schedule a meeting with Hernandez to discuss his concerns about these actions and Taylor's age discrimination, but Hernandez refused to meet with him. (*Id.* ¶ 20.)

In December 2021, Taylor organized a holiday video performance. (*Id.* ¶ 21.) All the younger department members participated, but Plaintiff was excluded. (*Id.*)

On January 27, 2022, Plaintiff attempted to meet with Taylor to discuss this alleged discrimination, but Taylor failed to attend the meeting or to reschedule until June 23, 2022. (*Id.* ¶ 22.) Plaintiff met with Hernandez on January 31, 2022, but Hernandez informed Plaintiff that "nothing would change." (*Id.* ¶ 23.)

On February 11, 2022, Taylor allocated funds for a class party to a first-year untenured teacher in his twenties but denied a similar request by Plaintiff and said it was inappropriate for him to ask. (*Id.* ¶ 24.) On February 17, 2022, during a meeting with Plaintiff and two other teachers, Principal Hernandez wrote on a whiteboard that "Gen X and Baby Boomers did not know about technology and Millennials and Gen Z did." (*Id.* ¶ 25.) In April 2022, another teacher who was affiliated with the union informed Plaintiff of "growing concern about senior teachers being overlooked for positions, replaced with untenured teachers, and subjected to harassment." (*Id.* ¶ 26.) She said the union was filing a grievance against Hernandez. (*Id.*)

In May 2022, Plaintiff volunteered to represent the school's music department during a parent event at the school. (*Id.* ¶ 27.) Taylor told Plaintiff no one would represent the middle school but then congratulated Beyer for representing the department in an email following the event. (*Id.*) On May 20 and 25, 2022, Plaintiff again met with Hernandez to address Plaintiff's concerns about Taylor's allegedly discriminatory conduct, but Hernandez refused to address Plaintiff's concerns. (*Id.* ¶¶ 28–29.) On June 2, 2022, Hernandez barred Plaintiff's wife from entering the school building without justification, notwithstanding the fact that Plaintiff's wife had regularly entered the building in the past. (*Id.* ¶ 32.) Younger teachers were still permitted to bring their friends into the school building without justification. (*Id.*)

On June 23, 2022, Plaintiff met with Human Resources Director Brent Harrington ("Harrington") and Assistant Superintendent Michelle Gosh ("Gosh") to report his concerns that he was facing discrimination. (*Id.* ¶ 33.) On July 29, 2022, Plaintiff sent Harrington and Gosh documentary evidence of discriminatory conduct by Taylor and Hernandez. (*Id.* ¶ 35.) On August 29, 2022, Plaintiff received a letter from Harrington concerning his discrimination complaints that said an investigation was not warranted. (*Id.* ¶ 37.)

On August 31, 2022, the school's Performing Arts Department held a musical performance from which Plaintiff was excluded. (*Id.* ¶ 38.) On September 1, 2022, during a mediation between Plaintiff and Beyer, Beyer made derogatory comments about Plaintiff's mannerisms which were a symptom of his Parkinson's Disease. (*Id.* ¶ 39.)

2. Post-October 20, 2022 Alleged Incidents of Discrimination and Retaliation

Plaintiff went on medical leave in October 2022. (*Id.* ¶ 40.)

On November 21, 2022, Plaintiff discovered that Harrington removed his response to Harrington's August 29, 2022 letter from Plaintiff's personnel file. (*Id.* ¶ 42.) The letter was removed four times between November 2022 and August 2023. (*Id.*) On May 22, 2023, Plaintiff learned he was incorrectly listed as retired in the New York State Teachers Retirement System, a change which was initiated on Harrington's last day in office. (*Id.* ¶ 43.)

In August 2023, Plaintiff sought medical leave until April 2024 while he was undergoing treatment for his Parkinson's Disease. (*Id.* ¶ 44.) Defendant approved the leave. (*Id.*) In October 2023, Defendant informed Plaintiff that he would need to submit medical documentation every 20 days during his leave. (*Id.* ¶ 45.) Plaintiff explained the hardship in providing documentation this frequently and requested flexibility, but Defendant did not respond to his request. (*Id.* ¶ 45.)

On December 7, 2023, Plaintiff was forced to retire prematurely because Defendant would not compensate Plaintiff for his sick days unless he submitted medical documentation pursuant to its requirements. (*Id.* ¶ 46.)

3. EEOC Charges

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 16, 2023. (*Id.* ¶ 5.) Plaintiff filed an Amended Charge with

the EEOC on or about December 21, 2023. (*See* Decl. of Gerald A. Smith in Supp. of Mot. To Dismiss ("Smith Decl."), (Dkt. No. 29) Ex. B). On September 6, 2024, he received a Notice of Suit Rights from the EEOC. (SAC ¶ 6.)

B. Procedural Background

Plaintiff initiated this Action on December 12, 2024. (*See* Compl. (Dkt. No. 1).) He amended his Complaint for the first time on March 11, 2025. (*See* Am. Compl. (Dkt No. 15).) He filed his Second Amended Complaint ("SAC") on May 1, 2025. (*See* Second Am. Compl. (Dkt. No. 21).) On September 23, 2025, Defendant filed its Motion To Dismiss the SAC. (*See* Def.'s Mot. To Dismiss (Dkt. No. 28); Smith Decl.; Def.'s Mem. Of Law in Supp. of Mot. To Dismiss (Dkt. No. 30).) On October 24, 2025, Plaintiff filed his Opposition to Defendant's Motion To Dismiss. (*See* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 31).) On November 7, 2025, Defendant replied. (*See* Def.'s Reply in Supp. of Mot. To Dismiss (Dkt. No. 32).)

## II. Discussion

A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B. Analysis

1. Timeliness

As an initial matter, the Court must determine whether certain of Plaintiff's allegations are time barred. Defendant asserts that any events occurring before October 20, 2022 are time-barred because they fall outside the 300-day period for Plaintiff to file charges of discrimination with the EEOC, which he filed on August 16, 2023.

"Title VII requires a plaintiff to pursue and exhaust administrative remedies before bringing suit, and . . . the statute of limitations for filing a charge of discrimination with the Equal Employment Opportunity Commission is 300 days." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (alternation, quotation marks, and citation omitted). "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period." *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022) (quotation marks and citation omitted). This 300-day period applies equally to Plaintiff's ADEA and ADA claims. *See Wade v. New York City Dep't of Educ.*, 667 F. App'x 311, 312 (2d Cir. 2016) (summary order) ("Title VII, the ADEA, and the ADA require a plaintiff to file a notice with the EEOC within 300 days of an alleged adverse action."); *see also Smith v. Johnson*, No. 14-CV-3975, 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014) ("In New York, the statute of limitations for Title VII, ADA, and ADEA claims is 300 days prior to the filing of an EEOC charge."), *aff'd*, 636 F. App'x 34 (2d Cir. 2016).

a. Applicability of Continuing Violation Doctrine

In the antidiscrimination context, "[d]iscrete acts [of discrimination] such as termination, failure to promote, denial of transfer, or refusal to hire" each "constitute[] a separate actionable unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). For such discrete acts, "only incidents that took place within the [300-day] timely filing period are actionable." *Id.* In other words, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113; *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 156 (2d Cir. 2012).

However, "[u]nder the continuing violation exception to the Title VII limitations period, if a [] plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin*, 685 F.3d at 155–56 (quotation marks omitted). "To determine whether a claim was timely filed with the EEOC, the incidents of employment discrimination . . . must be categorized as either discrete acts or continuing violations." *Castiblanco v. Am. Airlines, Inc.*, No. 17-CV-5639, 2019 WL 4751880, at *7 (E.D.N.Y. Sept. 29, 2019) (citation and quotation marks omitted). To demonstrate a continuing violation, "the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted); *see also Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) ("[A] continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."); *Chandrapaul v. City Univ. of N.Y.*,

No. 14-CV-790, 2016 WL 1611468, at *14 n.35 (E.D.N.Y. Apr. 20, 2016) (explaining that while *Morgan*, which postdated *Cornwell*, "narrowed the scope of the continuing violation doctrine," "courts in this Circuit continue to cite to *Cornwell* and its progeny for the parameters of the continuing violation doctrine, reasoning that *Morgan* abrogated *Cornwell* on other grounds"). "The exception usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests." *Scroxton v. Town of Southold*, No. 08-CV-4491, 2010 WL 1223010, at *4 (E.D.N.Y. Mar. 24, 2010).

Plaintiff asserts discrimination on the basis of his age, gender, and disability. (*See* SAC ¶ 1.) The continuing violation doctrine applies to pre-October 2022 instances of discrimination if Plaintiff has alleged "specific" and "'ongoing discriminatory polic[ies] or practice[s],'" or that his employer permitted "specific and related instances of discrimination . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." *Lyons v. New York Life Ins. Co.*, No. 20-CV-3120, 2022 WL 837202, at *11–12 (S.D.N.Y. Mar. 21, 2022) (first quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996), and then citing *Cornwell*, 23 F.3d at 704).

First, the Court examines whether Plaintiff has alleged a discriminatory policy or practice with respect to age, such that the continuing violation doctrine renders his pre-October 2022 allegations timely. Plaintiff alleges a number of age-based discriminatory actions prior to October 2022, including withholding job opportunities, (SAC ¶¶ 14, 15, 18, 19, 27), excluding him from school events, (SAC ¶¶ 21, 38), discriminatory comments (SAC ¶¶ 14, 16, 25); and disparate policies with respect to classroom funds and visitors, (SAC ¶¶ 24, 32). Plaintiff also alleges that in April 2022, a union-affiliated teacher informed Plaintiff that "there was growing concern about senior teachers being overlooked for positions, replaced with untenured teachers,

and subjected to harassment" and that "the union was filing a grievance against [the principal]." (SAC ¶ 26.) Finally, Plaintiff points to numerous instances of his raising concerns about age-related discrimination to school administrators, including Harrington, the human resources director. (*See, e.g.*, SAC ¶¶ 33–35.) Harrington allegedly informed him "that nothing was done or would be done to help with the discrimination" and sent him a letter disregarding his allegations of discrimination. (SAC ¶¶ 36–37.) After October 2022, Plaintiff alleges that Harrington removed his rebuttal to the letter dismissing his discrimination complaints from his personnel file on multiple occasions and falsely had him classified as retired on the New York State Teachers Retirement System. (SAC ¶¶ 42–43.)

The Court finds that these allegations plausibly allege a pattern or practice of age-based discrimination such that Plaintiff's pre-October 2022 allegations can be considered. Plaintiff has alleged that the District allowed this discrimination "to continue unremedied," *Lyons*, 2022 WL 837202, at *11, from January 2022, when he first met with the administration to discuss his concerns until he was ultimately "forced to retire prematurely" in December 2023, (SAC ¶¶ 23, 46). Such a "multi-year failure" to protect Plaintiff from discrimination plausibly suggests this was a continuing violation. *Pesce v. Mendes & Mount, LLP*, No. 19-CV-4922, 2020 WL 7028641, at *4 (S.D.N.Y. Nov. 30, 2020). Moreover, Plaintiff alleges that Harrington, specifically, ignored and interfered with Plaintiff's discrimination complaints both before and after the statutory period, (SAC ¶¶ 33–37, 43), which indicates that the pre- and post-October 2022 conduct was related, *see Dikambi v. City Univ. of New York*, No. 19-CV-9937, 2021 WL 4198252, at *4 (S.D.N.Y. Sept. 14, 2021) (finding the fact that "the harasser was the same" indicated that the post-limitations period conduct was a continuation of the pre-limitations conduct). Finally, Plaintiff's allegation of growing concern by the union about age-based

discrimination and harassment is sufficient at this stage to indicate a policy of age-based discrimination at the school. *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001) (explaining that "evidence that other [protected class] employees were subjected to the same type of harassment would be relevant" in determining whether continuing violation exception could be invoked); *contra Vergara v. Bentsen*, 868 F. Supp. 581, 591 (S.D.N.Y. 1994) (no discriminatory policy, and thus no application of the continuing violation doctrine, where there was "no allegation that the [defendant] similarly discriminated against other [members of the protected class] such that a 'discriminatory policy or mechanism' can be inferred").

With respect to gender-based discrimination, Plaintiff alleges that he was discriminated against based on gender by being passed over for female teachers for positions on three occasions prior to October 2022. (SAC ¶¶ 15, 19, 27.) He alleges that he reported the discrimination to Harrington, who did not address it. (SAC ¶¶ 33, 36.) Plaintiff does not, however, allege any facts indicating a general policy of gender-based discrimination at the school, such as concerns from the union about a broader practice of gender discrimination on Defendant's part; rather, he only alleges three discrete instances where a woman was promoted ahead of him. Because "[t]he continuing violation doctrine is disfavored in this Circuit," the Court declines to extend it on these facts, where there is nothing besides three instances of discrete discriminatory acts to indicate a policy of discrimination. *Freud v. New York City Dep't of Educ.*, No. 21-CV-2281, 2022 WL 889213, at *6 (S.D.N.Y. Mar. 25, 2022) (declining to apply continuing violation doctrine to allegations consisting of "laundry list of discrete acts, untethered from any relation to each other"), *aff'd,* No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023); *see also Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 595 (S.D.N.Y. 2012) (holding that allegations about "one meeting" and the plaintiff's "frustration with any alleged lack of

response" were "insufficient to show the [defendant] had a policy or practice of discrimination."); *United States v. City of New York*, 631 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (finding three instances of discriminatory failure to hire or interview insufficient to show ongoing discriminatory policy as required to apply continuing violation exception); *Gobin v. New York City Health & Hosps. Corp.*, No. 04-CV-3207, 2006 WL 2038621, at *4 (S.D.N.Y. July 19, 2006) (finding an "alleged demotion . . . and . . . false [s]tatement of [c]harges . . . [were] discrete acts" that "[a]ccordingly . . . c[ould] not form the basis for a continuing violation theory").

Finally, with respect to disability-related discrimination, Plaintiff alleges that when he returned to in-person work in May 2021 following a period of remote work due to disability accommodations, Principal Hernandez said she was surprised someone "like him" had the energy to do his job. (SAC ¶ 16.) He also alleges that the performing arts coordinator, Patricia Taylor, emailed the music department in June 2021 and insinuated, incorrectly, that Plaintiff had not been working full time when he was working remotely. (*Id.* ¶ 17.) Finally, Plaintiff asserts that, in September 2022, another teacher made "derogatory comments about Plaintiff's mannerisms, which were a result of [his] Parkinson's Disease." (*Id.* ¶ 39.) Construing Plaintiff's allegations in his favor, as the Court must at the pleading stage, these comments could be understood to be related to the post-October 2022 alleged acts of disability discrimination, such as the unduly burdensome medical documentation requirement for him to maintain leave eligibility. (*See* SAC ¶ 43.) Like with gender-based discrimination, Plaintiff's allegations of general complaints about discrimination might have been enough to "put [his] employer on notice that the employee believes himself to be complaining of discriminatory conduct," *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521–22 (S.D.N.Y. 2010), such that the Court could

infer that Defendant permitted disability-related discrimination to continue despite these complaints. But Plaintiff has not "provided any evidence that these comments were the result of a discriminatory policy rather than isolated acts of discrimination." *Gomez v. New York City Dep't of Educ.*, No. 21-CV-1711, 2022 WL 6564737, at *6 (S.D.N.Y. Aug. 15, 2022) (finding two derogatory comments made eight months and two months prior to statutory period were insufficient to invoke the continuing violation doctrine), *report and recommendation adopted*, 2022 WL 4298728 (S.D.N.Y. Sept. 19, 2022). Again recognizing that the continuing violation doctrine "is disfavored in this Circuit," *see Freud*, 2022 WL 889213, at *6, the Court likewise declines to extend the continuing violation doctrine to Plaintiff's allegation of disability-based discrimination prior to October 2022, *see Gomez*, 2022 WL 6564737, at *6 (finding two derogatory comments insufficient to involve the continuing violation doctrine where the plaintiff had not shown they were the "result of a discriminatory policy rather than isolated acts of discrimination"); *Karam v. County of Rensselaer*, No. 13-CV-1018, 2016 WL 51252, at *5 (N.D.N.Y. Jan. 4, 2016) (finding that "eight discriminatory comments . . . [over a] twelve year period" were not "sufficiently repetitious or continuous . . . to constitute a continuing violation of discrimination.").

b. Pre-Statutory Period Actions under Hostile Work Environment Claim

The continuing violation doctrine applies more generously to hostile work environment claims because such a claim by its "very nature involves repeated conduct," and, as such, "cannot be said to occur on any particular day." *Richard v. N.Y. City Dep't of Educ.*, No. 16-CV-957, 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) (quotation marks omitted) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010)). This means that "so long as an act contributing to that hostile environment takes place within the statutory time

period," otherwise time-barred incidents may be considered. *Id.* Nevertheless, Defendant argues that the continuing violation doctrine does not apply here because these allegations are not "sufficiently related to acts preceding the limitations period" to constitute a construing violation. (Def.'s Mem. 5 (quoting *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016) (summary order).) Indeed, under *Morgan*, an "offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." *McGullam*, 609 F.3d at 77. "[T]he Second Circuit Court of Appeals has instructed courts to make an 'individualized assessment of whether incidents and episodes are related." *Dikambi*, 2021 WL 4198252, at *3 (S.D.N.Y. Sept. 14, 2021) (internal quotations omitted).

Relevant considerations in determining relatedness are whether the timely acts took place in a "different environment in material respects," *McGullam*, 609 F.3d at 78, whether there was an "intervening action by the employer," *see id.*, whether "the harasser was the same," *see Dikambi*, 2021 WL 4198252, at *4, and how frequently the conduct occurred, *see Morgan*, 536 U.S. at 120 (affirming relatedness of conduct where pre- and post-limitations period conduct "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" (alteration adopted) (internal quotation marks and citation omitted)).

Defendant contends that the continuing violation doctrine does not apply to Plaintiff's allegations of harassment prior to the statutory period because they are insufficiently related to the timely allegations. (Def.'s Mem. 3–6.) Plaintiff does not respond directly to this timeliness argument, instead asserting that Plaintiff plausibly alleges a hostile work environment claim. (Pl.'s Opp'n 22–24.)

The timely allegations here are the removal of Plaintiff's rebuttal to a "Memorial Letter" concerning his discrimination complaints from his personnel file, (SAC ¶ 42), his being erroneously listed as retired in the New York State Retirement System, (*id.* ¶ 43), and the requirement that Plaintiff submit medical documentation during his leave more frequently than required under Defendant's policies, (*id.* ¶ 45). These acts were all alleged to have been taken by Brent Harrington, the Human Resources Director, or the human resources department. (*See id.* ¶¶ 42, 43, 45.)

Plaintiff also alleges that Harrington engaged in discriminatory conduct both before and after October 2022. In August 2022, Harrington rebuffed Plaintiff's request for the District to investigate the discriminatory conduct, including harassing comments, by Taylor and the school principal. (SAC ¶ 36.) Plaintiff also alleged—both in the Complaint and in his EEOC filing—that Harrington placed a "derogatory, inaccurate, and threatening letter" in Plaintiff's employment file. (SAC ¶ 37; Smith Decl. Ex. B at 3.) With respect to Harrington, Plaintiff has successfully alleged that the pre- and post-limitations period conduct was "perpetrated by the same manager[]." *Morgan*, 536 U.S. at 120; *see also Dikambi*, 2021 WL 4198252, at *4 (finding the fact that "the harasser was the same" indicated that the post-limitations period conduct was a continuation of the pre-limitations conduct). Moreover, the pre-October 2022 instances of harassment, which consisted of withholding job opportunities from Plaintiff, (SAC ¶¶ 14, 15, 18, 19, 27), excluding Plaintiff from school events, (*id.* ¶¶ 21, 38), discriminatory comments, (*id.* ¶¶ 14, 16), and disparate policies with respect to classroom funds and visitors, (*id.* ¶¶ 24, 32)—took place in the same "environment in material respects." *Contra McGullam*, 609 F.3d at 78 (holding relatedness not satisfied where post-limitations conduct occurred in a different department and different sector of the building from the timely conduct). Here, both timely and

untimely allegations pertain to Plaintiff's interactions with the school administration, and in some cases, the human resources department. (*See, e.g.*, SAC ¶¶ 33 (alleging June 2022 meeting with Harrington and Hernandez regarding discrimination), 43 (alleging May 2023 interaction with human resources department regarding Plaintiff's being falsely listing as retired). Nor are there any "alleged facts to suggest that an employer took intervening remedial action," which could have broken up the "continuity among the acts." *Klymn v. Monroe Cnty. Sup. Ct.*, 641 F. Supp. 3d 6, 22 (W.D.N.Y. 2022). On the contrary, the allegations in the complaint reflect the administration repeatedly refusing to address Plaintiff's concerns. (*See, e.g.*, SAC ¶¶ 36–37.) Accordingly, Plaintiff's allegations before and after October 2022 are sufficiently related to implicate the continuing violation doctrine.

For these reasons, the Court finds the continuing violation doctrine applies to Plaintiff's hostile work environment claim, and the Court will therefore consider both pre- and post-October 2022 allegations with respect to this claim.

2. EEOC Exhaustion

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quotation marks and citation omitted). The same is true for ADA claims and ADEA claims. *See Holland v. City of New York*, No. 10-CV-2525, 2011 WL 6306727, at *4 (S.D.N.Y. Dec. 16, 2011) ("Just as with a claim under Title VII or the ADEA, a precondition to filing an ADA claim in federal court is the exhaustion of administrative remedies and the timely filing of a complaint with the EEOC.").

However, the Second Circuit has recognized that "claims . . . not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999); *see also Duplan v. City of New York,* 888 F.3d 612, 622 (2d Cir. 2018) ("We have . . . long recognized that in certain circumstances it may be unfair, inefficient, or contrary to the purposes of the statute to require a party to separately re-exhaust new violations that are 'reasonably related' to the initial claim."); *Broomfield v. Bronx Lebanon Special Care Ctr., Inc.,* No. 16-CV-10047, 2025 WL 902456, at *5 (S.D.N.Y. Mar. 25, 2025) (same); *Mansaray v. Kraus Sec. Serv.*, No. 20-CV-1415, 2022 WL 445790, at *5 (S.D.N.Y. Feb. 14, 2022) (same). A claim is reasonably related to conduct in an EEOC charge if: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (alterations in original) (citation and quotation marks omitted); *see also Harris v. City of New York Dep't of Health & Mental Hygiene*, No. 24-CV-4348, 2026 WL 710201, at *5 (E.D.N.Y. Mar. 13, 2026) (same); *Melton v. Poughkeepsie City Sch. Dist.*, No. 24-CV-4420, 2025 WL 2733658, at *4 (S.D.N.Y. Sept. 24, 2025) (same).

The first category "is essentially an allowance of loose pleading[,] and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation, alteration, and quotation marks omitted). The Second Circuit has instructed that the focus of the exhaustion inquiry "should be on the factual allegations made in the EEOC charge itself," and whether they

"gave that agency adequate notice to investigate" the claims subsequently asserted in federal court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (alteration and internal quotation marks omitted); *see also Melton*, 2025 WL 2733658, at *4 (finding the plaintiff failed to exhaust racial discrimination claims where the "EEOC Charge [was] limited entirely to claims of discrimination and retaliation on the basis of disability, and there [was] no mention of [the p]laintiff's race on the face of the document"); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) (noting the focus of the "reasonably related" inquiry should be on "the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate" the claims in federal court.)

"Defendants bear the burden of proving a failure to exhaust[.]" *Kane v. St. Raymond's Roman Cath. Church*, No. 14-CV-7028, 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015). Courts therefore generally deny motions to dismiss for failure to exhaust unless the failure "is clear from the face of the complaint[.]" *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016). However, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider EEOC filings because "they are public documents" and are "integral to Plaintiff's claims." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment."); *McLeod v. Lowe's Home Improvement*, Nos. 09-CV-834, 09-CV-835, 2010 WL 4366901, at *2 n.2 (N.D.N.Y. Oct. 28, 2010) ("On [a] Fed. R. Civ. P. 12(b)(6) motion, the [c]ourt may properly consider the EEOC charges and right-to-sue notices

because they are public documents in administrative proceedings and are integral to [the] plaintiff's claims.").

Defendants argue that Plaintiff's allegation that he was discriminated and retaliated against "when he was required to provide additional medical documentation while out on leave" was neither asserted in nor reasonably related to Plaintiff's EEOC charge and therefore claims based on this allegation must be dismissed for failure to exhaust administrative remedies. (*See* Def.'s Mem. 6–8; SAC ¶¶ 45–46.) Plaintiff responds that his original EEOC charge contained allegations that Defendant's "discriminatory and retaliatory conduct exacerbated his Parkinson's disease" and that "Defendant repeatedly removed Plaintiff's rebuttal to the Memorial Letter." (Pl.'s Opp'n 26.) The materials that Court may consider in resolving this Motion support this claim. (*See* Smith Decl. Ex. 2 at 3.) Plaintiff also asserts that he "in fact notified the EEOC of Defendant's burdensome [medical] documentation requirement," [and his "premature retirement in December 2023," (Pl.'s Opp'n 26), but the exhibit he cites in support of this contains no discussion whatsoever of the documentation requirement, nor of Defendant's allegedly wrongful denial of sick leave, (*see* Pl.'s Opp'n Ex. A (Dkt. No. 31-1).)

Therefore, the question for the Court is whether the allegation regarding the burdensome documentation requirement is reasonably related to the EEOC charge. Plaintiff's Complaint does not "allege[] retaliation for filing the EEOC charge." *Alfano*, 294 F.3d at 381. Rather, the protected activity alleged with respect to his retaliation claims is complaining about discrimination to his employer. (*See* SAC ¶¶ 96–97, 107–108, 118–119.) Accordingly, the Court must evaluate whether either of the other two tests for reasonably relatedness is met: "[t]he claim would fall within the reasonably expected scope of an EEOC investigation of the charges

of discrimination"; or "the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Alfano*, 294 F.3d at 381.

"The first, and most expansive, test for reasonable relation considers whether the alleged discriminatory conduct would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Junior v. Erie Cnty. Med. Ctr. Corp.*, No. 18-CV-1014, 2021 WL 8946164, at *3 (W.D.N.Y. Dec. 28, 2021) (quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 2306959 (W.D.N.Y. June 27, 2022). "The Second Circuit has described this test as 'essentially an allowance of loose pleading,' which serves to 'recogniz[e] that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Id.* (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)).

Plaintiff's EEOC charge alleges a number of discriminatory actions, including being passed over for new positions, unsuccessfully meeting with school administrators to address the discrimination, his personnel file being tampered with, and being incorrectly listed as retired on the state's teacher retirement system. (Smith Decl. Ex. B, at 2–3.) These two actions can also be characterized as an imposition of undue administrative burdens on Plaintiff, just like the medical documentation requirement Defendant seeks to bar as unexhausted. (Def.'s Mem. 6.) Because "at least some of the later conduct described by Plaintiff involves allegations that he was overburdened," they are "similar to his earlier allegations before the [EEOC] . . . [which also] allege[] he was overburdened" and are thus reasonably related to the EEOC claims. *Sahni v. Legal Servs. of the Hudson Valley*, No. 14-CV-1616, 2015 WL 4879160, at *7 (S.D.N.Y. Aug. 13, 2015); *see also Almendral v. New York State Off. of Mental Health*, 743 F.2d 963, 967 (2d

Cir. 1984) (allegations reasonably related when they both involved "alleged manipulation of the civil service rules for discriminatory reasons" and "same alleged course of discrimination"). Particularly in light of Plaintiff's pro se status at the time he wrote the EEOC complaint, the Court concludes that the undue medical documentation allegation is sufficiently related to Plaintiff's EEOC charge such that he has exhausted his administrative remedies.

3. Failure to State a Claim

Now that the Court has determined which factual allegations can be considered with respect to Plaintiff's Title VII, ADEA, and ADA claims, it turns to whether Plaintiff's claims are adequately pled under Rule 12(b)(6).

a. ADEA, Title VII, and ADA Discrimination Claims

The Court's findings with respect to timeliness limit the factual allegations to be considered with respect to Plaintiff's discrimination claims under Title VII and the ADA. Allegations pertaining to events taking place before October 20, 2022 fall outside the 300-day period and cannot be considered for Plaintiff's Title VI or ADA discrimination claims. *See supra* section II.B.1.

Therefore, the only allegations the Court may consider when evaluating whether Plaintiff has stated discrimination claims under Title VII or the ADA are that Plaintiff went on medical leave in October 2022, (SAC ¶ 40), that Defendant removed Plaintiff's letter from his personnel file on four different occasions, (*id.* ¶ 42), that Plaintiff was falsely listed as "retired" in the New York State Teachers Retirement System without his consent or authorization, (*id.* ¶ 43), and that Plaintiff was forced to retire prematurely because he was not being compensated for his sick days, (*id.* ¶ 46).

i. ADEA Claims

The ADEA provides in part that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The statute limits the class of persons protected by this prohibition "to individuals who are at least 40 years of age." *Id.* § 631(a). "To establish a prima facie case [under the ADEA], a plaintiff with an age discrimination claim must show (1) that [he or] she was within the protected age group, (2) that [he or] she was qualified for the position, (3) that [he or] she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted); *see also Barker v. Ellington Bd. of Educ.*, No. 12-CV-313, 2013 WL 6331159, at *10 (D. Conn. Dec. 5, 2013) (same). Defendants appear to dispute both that Plaintiff experienced adverse employment actions and that any such actions give rise to an inference of discrimination. (Def.'s Mem. 12.)

An adverse employment action must cause an employee to suffer "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024); *see also Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (holding that *Muldrow*'s recent standard for adverse action in a Title VII context also extends to the ADEA and ADA because the "pertinent language in those statutes is similar to [that] in Title VII").[1] Such a harm need not be significant, or "serious, or substantial,

---

[1] In *Muldrow*, the Supreme Court clarified that an adverse employment action under Title VII need not be materially adverse, but merely that it be one where the plaintiff experienced "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. "[T]he Second Circuit has not yet clarified whether this standard applies to other federal discrimination claims, [but] courts in this Circuit have applied it to federal statutes that share language with, and are analyzed similarly to, Title VII." *Hinds v. PSEG Long Island LLC*, No.

or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. The "terms or conditions" of employment for purposes of an employment discrimination claim cover more than "economic or tangible" factors and apply beyond a "narrow contractual sense." *Id.* at 354. "[I]llustrative examples of harm in the workplace may include a loss in 'money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the like.'" *Dawson v. Dep't of Corr.*, No. 25-CV-210, 2026 WL 632674, at *5 (D. Conn. Mar. 6, 2026) (citing *Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring)). "That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions." *Mitchell*, 745 F. Supp. 3d at 91. The minimum requirement is that there must be some "disadvantageous change in the terms or conditions of the plaintiff's employment." *Id.* (internal citation and quotation marks omitted).

Plaintiff alleges a number of potentially adverse actions by Defendant including withholding of job opportunities, (SAC ¶¶ 14, 15, 18, 19, 27), excluding him from school events (*id.* ¶¶ 21, 38), discriminatory comments, (*id.* ¶¶ 14, 16, 26), and disparate policies with respect to classroom funds and visitors, (*id.* ¶¶ 24, 32).

The withholding of job opportunities from Plaintiff easily clears the bar for adverse employment actions set in *Muldrow*. Plaintiff alleges that Defendant, through its employees,

---

23-CV-8701, 2026 WL 266010, at *7 n.5 (E.D.N.Y. Feb. 2, 2026); *see, e.g.*, *Slater v. NYU Langone Health Sys.*, No. 24-CV-3711, 2025 WL 2208292, at *5 (E.D.N.Y. Aug. 4, 2025) (applying *Muldrow* to ADA); *Mitchell*, 745 F. Supp. 3d at 91 (applying *Muldrow* to ADA and ADEA).

withheld job postings from Plaintiff, (SAC ¶¶ 14–15, 27), did not support his promotion to new positions (*id.* ¶ 18), and demoted him and replaced him with younger employees to school positions, (*id.* ¶ 19). These constitute "changes impacting . . . [his] advancement opportunities" and "conduct [that] could be reasonably viewed as obstructing Plaintiff's ability to advance professionally." *Dawson*, 2026 WL 632674, at *5. They are thus "sufficient to demonstrate that Plaintiff experienced harm under *Muldrow*, for purposes of a motion to dismiss." *Id.*

The allegations that Defendant subjected Plaintiff to disparate treatment with respect to his wife's ability to enter the building to help him with class and school funds for a class party, (SAC ¶¶ 24, 32), also constitute adverse actions under *Muldrow.* The first of these actions caused harm to Plaintiff in terms of "convenience," in that it deprived him of help in the classroom; and the second "perks," in that Defendant deprived him of funds for a party for his students, both of which are sufficient under the *Muldrow* standard. *See Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring) (listing examples of harm which would satisfy the standard). They therefore constitute adverse actions. *Cf. Hayes v. G&E Real Est. Mgmt. Servs.*, No. 24-CV-1459, 2025 WL 769162, at *10 (S.D.N.Y. Mar. 11, 2025) (finding that repeated denial of PTO requests was sufficiently adverse under the *Muldrow* standard); *Rackley v. Constellis, LLC*, No. 22-CV-4066, 2024 WL 3498718, at *24 (S.D.N.Y. June 17, 2024) (denial of access to work email was sufficient adverse employment action to survive summary judgment because it "interfered with his ability to properly do his job" under *Muldrow*), *report and recommendation adopted as modified*, 2024 WL 3824108 (S.D.N.Y. Aug. 14, 2024).

With respect to the allegations of exclusion from school events and discriminatory comments, Plaintiff fails to point to facts that these harmed "an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. "Although being excluded from meetings and

embarrassed in front of one's colleagues are undoubtedly negative experiences, they are not legally cognizable adverse actions." *Polanco v. New York City Sch. Constr. Auth.*, No. 25-CV-5815, 2026 WL 575539, at *3 (E.D.N.Y. Mar. 2, 2026). While the age-related comments may strengthen an inference that discriminatory intent caused an adverse employment action, they do not in and of themselves constitute adverse employment actions. *See id.* (allegations that defendant "mocked [plaintiff's] accent" and "made disparaging comments about [her protected class] are sufficient to infer . . . discriminatory intent" but were not "legally cognizable adverse actions."). Though Plaintiff alleges he was not invited to musical performances at the school, (SAC ¶¶ 21, 38), such an allegation is similar to exclusion from meetings and does not demonstrate a change in the terms and conditions of his employment, *see Satina v. City of New York*, No. 24-CV-1842, 2025 WL 902893, at *5 (S.D.N.Y. Mar. 25, 2025) ("Plaintiff does not appear to have been demoted, to have lost earnings, or to even have suffered a change in role or responsibility. The negative evaluations and critiques cannot give rise to an age discrimination action.").

Defendant contends that Plaintiff has failed to demonstrate that age was the "but for" cause of these adverse actions. (Def.'s Mem. 12.) "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009). Defendant is correct that "the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (summary order); *see also Eisenberg v. New York City Dep't of Educ.*, No. 24-CV-1661, 2025 WL 2022093, at *11 (E.D.N.Y. July 18, 2025) (holding that discriminatory motive was not alleged by mere fact that comparators were assigned to cover his classes);

*McConkey v. Churchill Sch. & Ctr.*, No. 24-CV-6091, 2025 WL 2062195, at *15 (S.D.N.Y. July 23, 2025) (explaining that a "school system is not required to replace a teacher who decides to retire with a teacher of equal or greater age [under the threat]—that if it does not do so—it will be subject to an age discrimination lawsuit." (internal quotation marks and citation omitted)). However, Plaintiff points to additional facts from which the Court could infer Plaintiff's age was the but-for cause of these adverse actions. Specifically, Plaintiff alleges a number of comments regarding his age, including in direct relation to his being passed over for certain roles. For instance, he alleges that the performing arts coordinator said he was "too old" when she withheld a job posting from him, (SAC ¶ 14), and that she opposed his promotion to a band position because she "preferred a first-year untenured teacher in their twenties" for the job, (*id.* ¶ 18). He also alleges that during a meeting, the principal of the school wrote disparaging comments about older generations on a white board. (*Id.* ¶ 25.) While "[s]tray age-related remarks are insufficient to raise an inference of discriminatory motive," they can do so if they "(1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (quotation marks and citation omitted). Plaintiff alleges repeated marks about his age, which drew a link between stereotypes—such as older people having "less energy"—and the ability to do the job, and that were made by his supervisors, including the head of his department and his school principal. These comments are thus sufficient at this stage for the Court to conclude that Plaintiff'has plausibly alleged his age was the but-for cause of the adverse employment actions. Plaintiff thus has adequately stated a claim for discrimination under the ADEA.

ii. Title VII Claims

To state a claim for Title VII discrimination, a plaintiff must allege "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). Plaintiff alleges, and Defendant does not dispute, that he was a member of a protected class—namely, a male who was alleges he was discriminated against on the basis of sex. (*See* SAC ¶ 51).

But even assuming the Plaintiff has identified adverse actions under the statute, his timely allegations fail to "show[] circumstances that would be sufficient to permit a rational fact-finder to infer a discriminatory motive" on the basis of sex. *Beauchat v. Mineta*, No. 03-CV-3196, 2006 WL 2711608, at *6 (E.D.N.Y. Sept. 21, 2006), *aff'd*, 257 F. App'x 463 (2d Cir. 2007). Plaintiff does not, for instance, demonstrate that "similarly situated employees of a different gender . . . were treated more favorably" with respect to the relevant actions, such as removal of the letter from his personnel file, his designation as retired on the website, or his being forced to retire prematurely. *Id.* (quoting *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999) (alteration adopted)). Nor does he allege "[d]irect evidence, such as verbal comments expressing a discriminatory animus by individuals involved in making the adverse employment decision." *Garcia v. Walmart Inc.*, No. 25-CV-2631, 2026 WL 538894, at *5 (S.D.N.Y. Feb. 26, 2026). The comments he points to in his Opposition do not express any animus on the basis of sex but rather pertain to his seniority. (Pl.'s Opp'n 30 (citing SAC ¶ 24).) *See Brown v. Fire Dep't of City of New York*, No. 19-CV-2400, 2020 WL 6940992, at *5 (E.D.N.Y. Nov. 25, 2020) (where plaintiff complained of discrimination based on race, color, and national origin, not

disability, "any comments regarding individuals with disabilities [were] irrelevant for the purposes of discerning whether there is a plausible claim of discriminatory motive."). Nor does "the mere fact that Plaintiff is male and his supervisors were female . . . by itself, demonstrate an inference of discrimination." *Cordaro v. Dep't of Def.*, No. 19-CV-6601, 2021 WL 4121609, at *8 (W.D.N.Y. Sept. 9, 2021). With respect to his timely allegations, Plaintiff has simply pointed to no facts in his Complaint that could give rise to an inference of discrimination. Because Plaintiff fails to plead facts establishing the fourth element, his Title VII discrimination claims fail.

iii. ADA Claims

Plaintiff brings both discrimination and hostile environment claims under the ADA. To sufficiently allege disability discrimination under the ADA, Plaintiff must show "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2nd Cir. 2006). The first three elements are undisputed by the parties.

To establish the fourth element under the ADA, the Plaintiff must allege "that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019). Plaintiff claims that Defendant discriminated against him by "repeatedly den[ying] Plaintiff promotional and/or employment opportunities in favor of less qualified individuals outside of [his] protected class; made negative remarks related to Plaintiff's disability; and enacted unfeasible requirements for Plaintiff to qualify for medical leave." (SAC ¶ 71.) He also alleges that Defendant removed his letter from the file, erroneously

listed him as retired, and forced him to retire early. (*Id.* ¶¶ 42–43, 45–46.) The Court has determined that the continuing violation doctrine does not apply to Plaintiff's allegations of derogatory comments pertaining to his disability that were made in May and June 2021 and September 2022. (*See* SAC ¶¶ 16–17, 39.) While the Court can consider those comments as support for an inference of causation for adverse employment actions that accrued within the limitations period, *Henry v. Wyeth Pharms., Inc.*, No. 05-CV-8106, 2007 WL 4526525, at *4 n.4 (S.D.N.Y. Dec. 19, 2007) (quoting *Morgan*, 536 U.S. at 113), they do not provide sufficient support to sustain his claim. Without the inclusion of these allegations, Plaintiff's "naked assertions of discrimination[,] without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to dismiss." *Ciotti v. City of New York*, No. 23-CV-10279, 2025 WL 308022, at *14 (S.D.N.Y. Jan. 27, 2025).[2] Plaintiff has not, for instance, "alleged any facts

---

[2] The pre-October 2022 remarks about Plaintiff's disability on their own are insufficient to establish a causal link between the adverse employment actions and Plaintiff's disability. "Verbal comments can give rise to an inference of discrimination if a nexus exists between the allegedly discriminatory statements and the adverse employment action." *Renondeau v. Wildlife Conservation Soc'y*, No. 19-CV-2415, 2024 WL 1156643, at *7 (S.D.N.Y. Mar. 18, 2024) (quotation marks and citation omitted); *see also Amador v. All Foods, Inc.*, No. 12-CV-1715, 2013 WL 1306305, at *5 (E.D.N.Y. Feb. 20, 2013) (same), *report and recommendation adopted*, 2013 WL 1282353 (E.D.N.Y. Mar. 27, 2013). "Discriminatory statements are not deemed stray remarks when they are: (1) made by the decision maker or one whose recommendation is sought by the decision maker; (2) related to the specific employment decision challenged; and (3) made close in time to the decision." *Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 537 (E.D.N.Y. 2006) (quotation marks omitted), *aff'd*, 245 F. App'x 42 (2d Cir. 2007). Here, Plaintiff alleges that Hernandez and Taylor, his supervisors, made comments that could be liberally construed as relating to his disability or disability leave. (*See* SAC ¶¶ 16–17.) But those comments were not made close in time to the alleged burdensome medical documentation requirement, taking place in 2021, two years before the documentation requirement. (*Id.* ¶ 39.) The comment by Taylor regarding his Parkinson's symptoms was not made by a decisionmaker. Therefore, even if they were timely, these comments are insufficient to give rise to an inference of discrimination. *See Del Franco*, 429 F. Supp. 2d at 537; *see also Aiken v. MTA New York City Transit*, No. 18-CV-11756, 2021 WL 6621579, at *22 (S.D.N.Y.

suggesting similarly situated individuals without disabilities were treated more favorably than he was." *Oyer v. New York State*, No. 19-CV-1201, 2020 WL 5642186, at *6 (W.D.N.Y. Sept. 22, 2020); *see also Majied v. New York City Dep't of Educ.*, No. 16-CV-5731, 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) (noting that a plaintiff's "subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim"). Accordingly, Plaintiff's discrimination claims under the ADA are dismissed.

To prevail on a hostile work environment claim generally and under the ADA, a plaintiff must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano*, 294 F.3d at 373). "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* (internal quotation marks and citations omitted). "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

---

Sept. 2, 2021) (explaining that "verbal comments will typically support an inference of discrimination only when made by a decision-maker in the adverse employment action, and where there is a close nexus between the comments and the action" (quotation marks omitted)), *report and recommendation adopted*, 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021); *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 515 (S.D.N.Y. 2014) (plaintiff's allegations failed to show discriminatory motive because "allegedly discriminatory comments made by a nondecisionmaker are, as a matter of law, insufficient to raise an inference of discrimination").

In his Complaint, Plaintiff points to "objectionable conduct," namely, "degrading comments about Plaintiff's Parki[n]son's Disease." (SAC ¶ 79.) He pleads three discriminatory comments pertaining to his disability, including a colleague mocking his mannerisms a month before he went on medical leave. (*Id.* ¶¶ 16–17, 39.)[3] He asserts that he took medical leave because the ongoing discrimination exacerbated his symptoms. (*Id.* ¶ 40.) And while on leave, Plaintiff alleges that the Defendant took a number of actions which caused him administrative headaches and ultimately forced him to retire early: repeatedly removing a letter from his file, falsely listing him as retired, and imposing an allegedly impossible medical documentation requirement that he could not meet, and, as a result, denying his sick leave benefits. (*Id.* ¶¶ 42–43, 45–46.) Taken together, these allegations are sufficient to state a claim for a hostile work environment at the pleading stage, particularly given that Plaintiff asserts he was ultimately forced to retire as a result of these actions. *See Kukreja v. Sci. Sys. Co.*, No. 24-CV-1364, 2025 WL 1549071, at *7 (D. Conn. May 30, 2025) (allegations that employer "created a hostile work environment by, among other things, overworking [the plaintiff], humiliating him, and delaying his disability paperwork, eventually culminating in his termination" were sufficient to plausibly state a hostile work environment claim, especially because the allegations were "anchored by [the plaintiff's] termination"); *Herman v. City of New York*, No. 21-CV-6295, 2023 WL 6386887, at *8 (S.D.N.Y. Sept. 29, 2023) (finding that allegations of a discriminatory comment "made within earshot of Plaintiff and other colleagues, and the ensuing alleged [adverse employment actions were] sufficient at the pleading stage to sustain a claim of a hostile work environment"); *Weekes v. JetBlue Airways Corp.*, No. 21-CV-1965, 2022 WL 4291371, at *12

---

[3] As noted above, these comments are not time-barred because the continuing violation doctrine applies to Plaintiff's hostile work environment claim.

(E.D.N.Y. Sept. 16, 2022) (holding allegations of a series of events, that "as a result of which," the plaintiff was terminated, were sufficiently severe and pervasive to support hostile work environment claim until his termination); *Williams v. Serv. Tire Truck Ctr.*, No. 18-CV-1430, 2019 WL 210935, at *3 (N.D.N.Y. Jan. 16, 2019) (concluding that plaintiff's "coworkers' alleged misconduct, and [his supervisor's] failure to remedy that alleged misconduct, made his work environment so intolerable that he was forced to quit . . . suffic[ed], at [the pleading] stage, to set forth a cause of action for hostile work environment"), *report and recommendation adopted*, 2019 WL 2314559 (N.D.N.Y. May 31, 2019). Plaintiff has stated a claim for a hostile work environment under the ADA.

b. ADEA, Title VII, and ADA Retaliation Claims

With respect to Plaintiff's retaliation claims, the Court may consider time-barred allegations with respect to Plaintiff's underlying protected activity, but not with respect to the alleged adverse employment action. *See Cummings v. Brookhaven Sci. Assocs., LLC*, No. 11-CV-1299, 2011 WL 6371753, at *10 (E.D.N.Y. Dec. 20, 2011) ("With respect to plaintiff's retaliation claims under Title VII and the ADA, it is clear that for statute of limitations purposes, the clock begins to run at the time the adverse employment action occurred—not when the plaintiff engaged in the underlying protected activity."); *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (explaining that the statute of limitations for ADEA begins to run on the date the allegedly retaliatory action occurred). Because, as previously explained, the continuing violation exception applies to Plaintiff's untimely allegations of *age discrimination*, but not his allegations of *gender* or *disability* discrimination, the Court can only consider adverse employment actions prior to that date for Plaintiff's ADEA claim, not his Title VII or ADA claim. However, the Court will consider Plaintiff's allegations of *protected activity*

that took place prior to October 20, 2022 for all three claims to the extent they are related to an adverse employment action within the limitations period.

To state a claim for retaliation under all three statutes, Plaintiff must allege that: (1) he engaged in a protected activity known to the defendant; (2) the defendant took an adverse employment action against him; and (3) there exists a causal connection between the protected activity and the adverse action. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 257 (2d Cir. 2014); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."); *Craven v. City of New York*, No. 20-CV-8464, 2022 WL 2967310, at *5 (S.D.N.Y. July 27, 2022) ("Retaliation claims under Title VII and the ADEA are therefore analyzed under the same framework." (citing *Dickens v. Hudson Sheraton Corp.*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016))). The Court examines each element in turn with respect to each claim.

i. Protected Activity

Neither Party disputes that Plaintiff engaged in protected activity with respect to his claim of age discrimination under the ADEA, and indeed Plaintiff alleges specific instances where he complained of age-based discrimination. (Def.'s Mem 17–18; SAC ¶¶ 28–29.) The Court finds this element to be satisfied for the ADEA claim.

Defendant argues that Plaintiff's Title VII retaliation claim fails on the first element—participation in a protected activity—because the Complaint identifies no instance "in which Plaintiff complained to anyone about alleged sex discrimination." (Def.'s Mem. 17.) In response, Plaintiff contends that he "repeatedly complained to Defendant's management about discriminatory hiring and promotion practices favoring younger female employees," and that these complaints "constitute[ed] protected activity even without express reference to 'sex

discrimination.'" (Pl.'s Opp'n 35 (citing *Moore v. City of New York*, No. 23-CV-4837, 2024 WL 989843, at *13 (S.D.N.Y. Mar. 7, 2024).) In support of this, Plaintiff cites to portions of the SAC where he alleges he met with the principal to express concerns about "[Performing Arts Coordinator] Taylor's discriminatory conduct", (SAC ¶ 28); age discrimination, (*id.* ¶¶ 28–29); and generally, "ongoing discrimination," (*id.* ¶¶ 33–37).

To show protected activity under Title VII, "the protected activity alleged must involve some sort of complaint about a type of discrimination that Title VII forbids." *Castagna v. Luceno*, No. 09-CV-9332, 2011 WL 1584593, at *10 (S.D.N.Y. Apr. 26, 2011), *aff'd,* 744 F.3d 254 (2d Cir. 2014), and *aff'd,* 558 F. App'x 19 (2d Cir. 2014). Though Plaintiff's allegations do not specify that he explicitly used the words "sex discrimination" in his complaints, he was not required to do so "to afford his complaints protected-activity status." *Krasner*, 680 F. Supp. 2d at 521. Rather, so long as the conduct complained of "lend[s] itself to a reasonable inference of unlawful discrimination," and the employer is "put . . . on notice that the employee believes himself to be complaining of discriminatory conduct," this element is satisfied. *Id.* Here, Plaintiff alleges that he specifically complained about "ongoing discrimination," which could plausibly encompass the instances where he was passed over for opportunities in favor of his female colleagues. (*See, e.g.*, SAC ¶ 15.) The Court therefore finds Plaintiff established this element for his Title VII claim.

For similar reasons, the Court finds that Plaintiff has sufficiently pled that he engaged in protected activity with respect to his ADA retaliation claim. While the most egregious allegation of disability-based discrimination—that an individual made "derogatory comments about Plaintiff's mannerisms, which were a result of [his] Parkinson's Disease" during a mediation—took place after all of Plaintiff's complaints about discrimination, (SAC ¶ 39), Plaintiff also

points to two instances of his supervisors making comments that could be construed to relate to his disability or disability leave prior to his complaining of discrimination at the school, (*id.* ¶¶ 16–17). It is therefore plausible that Plaintiff complained of discrimination prohibited under the ADA such that his employer would be "on notice" that he was complaining of alleged disability discrimination. *Krasner*, 680 F. Supp. 2d at 521. Plaintiff has likewise established he engaged in protected activity with respect to disability-related discrimination.

<u>ii. Adverse Employment Action</u>

To establish an adverse employment action in the retaliation context, the action must be "'materially adverse,' meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 348 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In *Muldrow*, the Supreme Court noted that this standard is "meant to capture those employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 68). "The expanded definition of adverse employment action embraced by *White* in the context of Title VII retaliation claims applies to retaliation claims under the ADA and ADEA[.]" *Murtha v. New York State Gaming Comm'n*, No. 17-CV-10040, 2019 WL 4450687, at *19 n.13 (S.D.N.Y. Sept. 17, 2019). "Actions that are 'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *White*, 548 U.S. at 68). Actions that have been found to be sufficient under this standard include improper negative reviews and arbitrary withholding of discretionary funds and permissions, *Westbrook v. City of New York*, No. 23-CV-3164, 2026 WL 802613, at *8 (S.D.N.Y. Mar. 23, 2026); being forced to work through lunch breaks, knowingly causing an employee to develop migraines, *Collymore v. City*

*of New York*, 767 F. App'x 42, 46 (2d Cir. 2019) (summary order); and a change in shifts reducing compensation and requiring a plaintiff to work more closely with their alleged harasser, *Herman*, 2023 WL 6386887, at *9.

Plaintiff points to a number of alleged retaliatory employment actions including "removing him from positions within the music department; excluding him from music department decisions; excluding him from staff performances, staff photographs, and school events; tampering with his employment file and retirement; requiring Plaintiff to provide continuous updated medical documents while he was on medical leave; refusing to provide him with sick pay; reducing his pension; and failing to address and/or investigate Plaintiff's multiple discrimination complaints." (SAC ¶ 98, *see also id.* ¶¶ 109, 120.)

All of these allegations are actionable for Plaintiff's ADEA retaliation claim because the continuing violation doctrine applies. *See supra* section II.B.1.a. Thus, Plaintiff's allegations that Defendant excluded and/or removed him from roles at the school suffice to establish a materially adverse employment action. *Kallinikos v. New York State Dep't of Corr. & Cmty. Supervision*, No. 19-CV-331, 2019 WL 3216769, at *7 (E.D.N.Y. July 17, 2019) ("An adverse employment action means a materially adverse change in the terms and conditions of employment and includes, among other things, termination, demotion or a failure to promote." (quotation marks omitted)). Moreover, Plaintiff's allegations that he was excluded from school performances, denied funding for a class party, and disallowed from having his wife assist with classes are also the sort of "arbitrar[y] withh[olding]" of "discretionary funds and permissions" which have been found to be materially adverse employment actions. *Westbrook*, 2026 WL 802613, at *8; *see also Mitchell*, 745 F. Supp. 3d at 99 (holding allegations of the defendants' excluding the plaintiff from key meetings, along with other acts of retaliation, was sufficient to

state a materially adverse retaliatory action); *Nathan v. Takeda Pharms. Am., Inc.*, 890 F. Supp. 2d 629, 647 n.22 (E.D. Va. 2012) (explaining that "withholding discretionary benefits is not necessarily immune from attack as an adverse employment action within the context of a retaliation claim"), *aff'd*, 544 F. App'x 192 (4th Cir. 2013).

The Court next turns to the post-October 2022 allegations, which are timely with respect to all three claims. These include Plaintiff's allegations that Defendant tampered with his employment file, falsely listed him as retired, imposed an unduly burdensome medical documentation requirement, denied him sick leave, and caused him to retire early. The repeated removal of Plaintiff's rebuttal letter from his file, which he alleges detailed the discrimination he experienced, falls into the category of "petty slight[]s or minor annoyance[s]" which are not materially adverse. *Tepperwien*, 663 F.3d at 568; *see also Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) ("[T]he unexplained absence of certain documents that [t]he [plaintiff] thinks should be in his employment file . . . do[es] not constitute [an] adverse employment action[]."). But Plaintiff's allegation that Defendant falsely listed him as retired does constitute a materially adverse action because he asserted that this listing negatively affected his benefits. (Pl.'s Opp'n Ex. A at 3.) *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (stating that "a material loss of benefits" is an adverse employment action); *cf. Jetter v. Knothe Corp.*, 200 F. Supp. 2d 254, 267 (S.D.N.Y. 2002) (finding that false communications to others that a plaintiff retired was not an adverse employment action, but noting that it could be had it damaged the employee's reputation), *aff'd,* 324 F.3d 73 (2d Cir. 2003). The requirement that Plaintiff submit medical documentation every 20 days also constitutes a materially adverse employment action because he alleges that the "excessive scrutiny . . . resulted in negative consequences," namely, the denial of his sick leave and subsequently his premature retirement.

*Scafidi v. Baldwin Union Free Sch. Dist.*, 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003); *see also McGrier v. Cap. Cardiology*, No. 12-CV-1044, 2022 WL 2105854, at *12 (N.D.N.Y. June 10, 2022) (same). (*See* SAC ¶ 45–46.) Finally, it is self-evident that forcing someone into premature retirement is an adverse employment action. *See, e.g.*, *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 245 (D. Conn. 2008) (concluding forced retirement was adverse employment action); *Scotti v. County of Nassau*, No. 02-CV-3685, 2005 WL 3670913, at *5 (E.D.N.Y. Sept. 13, 2005) ("Clearly, the defendants' actions in forcing plaintiff into mandatory retirement . . . constitutes an adverse employment action."). Thus, Plaintiff has established post-October 2022 adverse actions, which can be considered in construing his Title VII and ADA claims. Plaintiff has therefore adequately pled adverse actions for all three claims.

iii. Causation

The higher hurdle for Plaintiff to clear, however, is establishing "a causal connection between the protected activity and the adverse action." *Abrams*, 764 F.3d at 257. A plaintiff may plead causation either (1) "directly, through evidence of retaliatory animus toward the plaintiff, or (2) indirectly, through circumstantial evidence." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quotation marks omitted). "Such circumstantial evidence may include close temporal proximity between the plaintiff's protected activity and the adverse action taken against [him]." *Id.* (quotation marks omitted and alterations adopted). Evidence of retaliatory animus typically consists of allegations that a defendant told the plaintiff or others that they were taking the adverse action because of the protected activity. *See, e.g., Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 195 (E.D.N.Y. 2016) (finding direct evidence of retaliatory animus where plaintiff alleged that defendant told him plaintiff was "blacklisted because of the former lawsuit"); *Garcia v. Coll. of Staten Island*, No. 11-CV-2252, 2012 WL

3930448, at *9 (E.D.N.Y. July 31, 2012) (finding retaliatory animus where the defendant's employee had stated she testified against the plaintiff because of "what he did," referencing the plaintiff's protected activity (alterations omitted)). Plaintiff pleads no such direct evidence here, so the Court must determine whether the allegations contain sufficient circumstantial evidence to establish a causal connection.

With respect to the pre-October 2022 allegations, many of the adverse employment actions followed closely enough on the heels of protected activity to establish a causal connection at this stage in the litigation. For instance, less than one month after Plaintiff met with Principal Hernandez to complain of discrimination, the school withheld funds from Plaintiff for a class party despite allocating such funds to his younger colleague. (SAC ¶¶ 23–24.) "Temporal proximity alone can establish causal connection as long as the temporal proximity is generally 'less than three or four months.'" *Oghide v. Collins*, No. 24-CV-232, 2026 WL 880811, at *16 (S.D.N.Y. Mar. 31, 2026) (quoting *Gehlaut v. New York City Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (summary order)). Plaintiff also alleges a close temporal proximity between his raising concerns about age discrimination in May 2022 and his wife being barred from entering the school in June 2022. (SAC ¶¶ 29, 32.)

Plaintiff fails, however, to establish a causal connection between Defendant's withholding of job opportunities and any protected activity, because he alleges that Defendant took these actions *before* he engaged in any protected activity. (SAC ¶¶ 15, 19 (describing withholding of job opportunities in November 2020 and August 2021, prior to Plaintiff's attempt to complain of discrimination in September 2021).) "[A]n adverse employment action that precedes the protected activity cannot support a retaliation claim." *Glover v. Grimaldi*, No. 23-CV-5019, 2025 WL 919930, at *13 (S.D.N.Y. Mar. 26, 2025); *see also Darwin v. Newburgh*

*Operations, LLC*, No. 22-CV-872, 2025 WL 104140, at *6 (S.D.N.Y. Jan. 15, 2025) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in [the] protected activity." (citation omitted)); *Forrest v. N.Y.C. Hous. Auth.*, No. 22-CV-6480, 2023 WL 3203646, at *10 (S.D.N.Y. May 2, 2023) (noting at summary judgment that an adverse employment action cannot precede a protected activity in a retaliation claim). Nevertheless, Plaintiff has alleged that some adverse employment actions were taken in response to his protected activity under the ADEA such that this claim survives the Motion to Dismiss.

Specifically, the following timely adverse employment actions can be considered for all three retaliation claims: the false listing of him as retired, the burdensome medical documentation requirement, and the resulting denial of his sick leave leading forced early retirement. (SAC ¶¶ 43, 45, 46.) The soonest of these events, the false listing of Plaintiff as retired in May 2023, took place nearly a year after he last engaged in protected activity when he complained of discrimination in August 2022. (SAC ¶¶ 36, 43.) Such a gap is typically too lengthy to establish causation. *Monplaisir v. New York City Dep't of Fin.*, No. 24-CV-1882, 2026 WL 2475147, at *20 (S.D.N.Y. Aug. 24, 2026) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."); *see also De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (same) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010)).

Plaintiff asserts that he can establish causation, notwithstanding this gap in time, because Defendant lacked an opportunity to retaliate since he took leave in October 2022. (Pl.'s Opp'n 37.) Defendant responds that Plaintiff's argument is belied by the fact that the alleged adverse employment actions took place while he was out on leave, indicating that Defendant could have

retaliated sooner. (Def.'s Reply 7–8.) While it is true that Plaintiff was out on leave for seven months before the first adverse employment action took place, the Court recognizes that the previous types of actions taken against Plaintiff were those that were only available while he was teaching, such as withholding class funds. The false listing of Plaintiff as retired in May 2023 may thus have been "the first available opportunity for Defendant to retaliate against Plaintiff." *Blanco v. Brogan*, 620 F. Supp. 2d 546, 557 (S.D.N.Y. 2009). Also relevant is that the person who listed Plaintiff as retired was Harrington, the same person to whom Plaintiff complained about discrimination in August 2022. (SAC ¶¶ 36, 43.) And while the medical documentation requirement was not imposed by Harrington, it is alleged to have sought the same ends as the false retirement listing, namely, denying Plaintiff benefits. *See Pathania v. Metro. Museum of Art*, No. 11-CV-2119, 2013 WL 1182076, at *21 (E.D.N.Y. Mar. 21, 2013) (finding inference of causation supported by record "suggest[ing] a continuing pattern of [the same adverse employment actions]"), *aff'd*, 563 F. App'x 42 (2d Cir. 2014); (SAC ¶¶ 42, 45; Pl.'s Opp'n Ex. A at 3.) Thus, the Court can infer, based on the relative lack of opportunity to do so and the common thread running through the post-leave adverse actions, that the medical documentation requirement and subsequent denial of benefits was causally connected to Plaintiff's protected activity.

The Court thus finds that Plaintiff has adequately stated a claim for retaliation under Title VII, the ADEA, and the ADA.

c. FMLA Claims

Plaintiff brings a claim under the Family and Medical Leave Act ("FMLA") claiming both discrimination and retaliation. Defendant points out—correctly—that "courts in this Circuit do not recognize a cause of action for FMLA discrimination." *Wasserman v. New York City*

*Dep't of Educ.*, No. 24-CV-1719, 2025 WL 1906978, at *6 n.4 (S.D.N.Y. July 10, 2025). (*See* Def.'s Mem. 19.) Defendant also argues that Plaintiff has not asserted an FMLA interference claim because he has failed to plead that he was eligible for FMLA leave. (Def.'s Mem. 20–21.)

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which [he] was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C. § 2615(a)(1)). A claim of FMLA interference has five elements: a plaintiff must establish that (1) "[he] is an eligible employee under the FMLA"; (2) "the defendant is an employer as defined by the FMLA"; (3) the plaintiff "was entitled to take leave under the FMLA"; (4) the plaintiff gave the employer notice of his or her intention to take leave; and (5) the plaintiff "was denied benefits to which [he] was entitled under the FMLA." *Graziadio*, 817 F.3d at 424; *see also Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order) (applying the same five-factor test).

To be "eligible" under the FMLA, an employee must have been employed "(i) for at least twelve months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A); *see also Woodford v. Cmty. Action of Greene Cnty., Inc.*, 268 F.3d 51, 54 (2d Cir. 2001) ("In order to be eligible for FMLA benefits, an employee must have been employed for at least twelve months with an employer and have worked at least 1,250 hours in the twelve months preceding the date on which eligibility is determined."). Eligibility is a threshold issue, and it is insufficient for Plaintiff to "merely assert[ ] in a conclusory manner that he is eligible without stating any facts that relate to the definition of an eligible employee." *Smith v. Westchester County*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011).

It is unclear from the Complaint how many hours Plaintiff worked in the 12 months before his medical leave began in October 2022, nor how many hours he worked prior to requesting additional leave time in August 2023. (*See* SAC ¶¶ 40, 44.) "[T]o the extent that plaintiff has failed to assert that [he] worked the requisite number of hours to qualify for FMLA leave, [plaintiff] has failed to meet the pleading requirements for FMLA eligibility." *Bakeer v. Nippon Cargo Airlines, Co., Ltd.*, Nos. 09-CV-3377, 09-CV-3378, 2011 WL 3625103, at *40 (E.D.N.Y. July 25, 2011), *report and recommendation adopted*, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011), *and report and recommendation adopted sub nom. Michaud v. Nippon Cargo Airlines, Co., Ltd.*, 2011 WL 5402642 (E.D.N.Y. Nov. 7, 2011), *and report and recommendation adopted sub nom. Frith v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3378, 2011 WL 5429642 (E.D.N.Y. Nov. 7, 2011). Plaintiff does not address this deficiency in his Opposition, merely responding that he "clearly exercised his FMLA rights when he took approved medical leave in October 2022 and August 2023." (Pl.'s Opp'n 39.) Such a conclusory allegation of eligibility does not satisfy the pleading requirements for FMLA interference claims. Accordingly, the Court dismisses Plaintiff's FMLA interference claim, but grants Plaintiff leave to amend to cure this technical deficiency. *Ingrassia v. County of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003) (granting the defendant's motion to dismiss FMLA claim because the plaintiff failed to specify that she worked the necessary hours in the correct time period, but allowing the plaintiff to amend to cure the deficiency).

Plaintiff also asserts a retaliation claim under the FMLA on the basis that Defendant retaliated against him for taking FMLA leave by requiring him to provide medical documentation every 20 days and denying him sick pay after he submitted his FMLA request. (SAC ¶ 138.)

FMLA retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas*. *See Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429 (alteration, quotation marks, and citation omitted). For the purposes of FMLA retaliation claims, an "adverse employment action" is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (quotation marks omitted).

Courts have held that when a plaintiff is granted leave under the FMLA, the plaintiff has exercised rights protected under the FMLA for the purposes of this first element of an FMLA retaliation claim. *See Potenza*, 365 F.3d at 168 (holding the plaintiff "exercised rights protected under the FMLA" because the plaintiff's "leave was taken in accordance with the FMLA"); *Carla Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-CV-577, 2019 WL 1994488, at *17 (E.D.N.Y. May 6, 2019) (holding that a plaintiff "exercised rights protected under the FMLA when she requested and was granted leave"). Defendant's argument that Plaintiff's retaliation claim fails because he failed to plead the technical requirements for leave eligibility is unavailing. (Def.'s Mem. 22.) "An FMLA retaliation claim asks whether the [d]efendant was motivated by the plaintiff's taking of FMLA leave, not whether the employee was entitled [to leave in the first place]." *Ottley-Cousin*, 2019 WL 1994488, at *17. Here, Plaintiff alleges that he was granted FMLA leave in October 2022 and August 2023, and thus he has satisfied the first element of an FMLA retaliation claim. (*See* SAC ¶¶ 40, 44.)

Defendant disputes that the requirement to submit medical documentation every 20 days was an adverse employment action constituting retaliation under FMLA. (Def.'s Mem. 21–22.) While the Court agrees that merely requiring documentation for medical leave is not an adverse employment action, it notes that Plaintiff is not challenging the medical documentation requirement as such, but instead that he was required to provide documentation every 20 days, which he alleges was impossible according to his doctor. (SAC ¶ 45.) Such an unduly burdensome—and allegedly impossible—requirement to maintain sick leave goes far beyond the mere requirement of medical documentation which has been found to not be an adverse employment action in the FMLA context and beyond. *See Walker v. Amerigas Propane, LP*, No. 26-CV-726, 2026 WL 2641822, at *7 (E.D. La. Sept. 8, 2026) (explaining that "repeated, overbroad, or unnecessary medical documentation requests that coerce or discourage employees from seeking accommodations may constitute unlawful interference," and noting the defendant's "requests for 'constant' updates" could amount to such an interference, in the ADA context (citing *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council Inc.*, 896 F. Supp. 2d 849, 873 (N.D. Cal. 2012))). *Contra Nicastro,* 60 F. Supp. 2d at 186 (S.D.N.Y. 1999) (concluding the plaintiff being required to bring in doctor's notes for sick leave "d[id] not constitute adverse employment actions and so cannot be the basis of any claim of Title VII retaliation") (quotation marks omitted); *Blake v. Potter*, No. 03-CV-7733, 2007 WL 2815637, at *9 (S.D.N.Y. Sept. 25, 2007) ("[B]eing asked to bring in a doctor's note to substantiate a request for sick leave . . . would not dissuade a reasonable employee in Plaintiff's position from complaining about discrimination.), *aff'd,* 330 F. App'x 232 (2d Cir. 2009); *Wagner v. Cnty. of Nassau*, No. 11-CV-1613, 2014 WL 3489747, at *9 (E.D.N.Y. July 11, 2014) ("Requiring doctors' notes to return from sick leave is not an adverse employment action, even under the more lenient standard

applicable to retaliation claims."). Therefore, the Court determines that the allegedly impossible-to-meet medical documentation requirement is an adverse employment action under FMLA.

Plaintiff also asserts that he was wrongfully denied sick pay after exercising his FMLA rights. (SAC ¶ 138.) "[U]njustified charging of sick days can be a sufficient adverse action" for retaliation claims. *Wagner*, 2014 WL 3489747, at *9 (citing *Rolon v. Ward*, No. 05-CV-168, 2008 WL 4700705, at *22 (S.D.N.Y. Oct. 24, 2008)); *Rolon*, 2008 WL 4700705, at *22 ("If the jury determines that [the] plaintiff lost sick leave days as a result of [the] defendants' wrongful charging of sick leave days, this could constitute an adverse employment action."); *Figueroa v. N.Y. Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 234 (S.D.N.Y. 2007) (distinguishing that case from an instance where the plaintiff was placed on involuntary leave and not allowed to return to work, which constituted an adverse action); *cf. Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) ("The loss of all vacation and sick days—material benefits of her employment with the NYPD—is sufficient to allege a materially adverse employment action under Section 1981 [retaliation]."). The Court therefore finds that Plaintiff has sufficiently identified an adverse employment action for his FMLA retaliation claim.

Defendant further argues that Plaintiff fails to plead a causal connection between the protected activity and the adverse employment action because Plaintiff first went out on FMLA leave more than a year before the alleged adverse action. (Def.'s Mem. 22.) But this argument disregards the fact that Plaintiff also sought leave in August 2023, three months before the medical documentation requirement was imposed and four months before the alleged wrongful withholding of sick leave in December 2023. (*See* SAC ¶¶ 44–46.) The question for the Court is whether these three- and four-month lapses in time are sufficient to infer retaliatory intent.

An inference of retaliatory intent in the FMLA context can be shown when a "causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer," which can manifest from "very close" temporal proximity between the protected activity and adverse action. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (quotation marks, alteration, and citation omitted). However, as previously noted, "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Monplaisir*, 2026 WL 2475147, at *20. Plaintiff marshals no support for the causal inference other than his assertion of temporal proximity. (*See* Pl.'s Opp'n 40.) However, the three-month period between his seeking, and receiving, additional leave in August 2023 and being required to submit burdensome medical documentation in October is sufficient for this court to infer a causal connection. *Montplaisir*, 2026 WL 2475147, at *20. Additionally, because Plaintiff's termination in December 2023 followed necessarily from his inability to meet the documentation requirements, the causal connection is satisfied notwithstanding the fact that this action took place four months after his requesting FMLA leave. *Guzman v. News Corp.*, No. 09-CV-9323, 2013 WL 5807058, at *21 (S.D.N.Y. Oct. 28, 2013) (finding evidence of "unfavorable treatment culminating in [the plaintiff's] termination [was] enough to permit a reasonable factfinder to infer causation"). Accordingly, the Court finds Plaintiff has stated a claim for FMLA retaliation with respect to the medical documentation requirement and the denial of sick leave. Defendant's Motion To Dismiss is denied with respect to the FMLA retaliation claims.

d. Sufficient Notice Under New York State Education Law § 3813(1)

Finally, the Court considers whether Plaintiff provided sufficient notice of his claim under New York State Education Law § 3813(1). Defendant asserts that Plaintiff's state law

claims must be dismissed because he "failed to comply with the notice provisions" therein. (Def.'s Mem. 23–24.) Further, it argues that Plaintiff's EEOC charge did not satisfy the notice requirements of Education Law § 3813(1) and does not fall under the "rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claim alleged," "is served on the governing board of the district" (and not a "different arm of the district"), and is served within the statutory time period. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695, 2024 WL 4277940, at *9 (S.D.N.Y. Sept. 23, 2024) (quoting *Sullivan v. N. Babylon Union Free Sch. Dist.*, No. 15-CV-834, 2016 WL 11673810, at *4 (E.D.N.Y. Mar. 21, 2016)). In response, Plaintiff asserts that notice was satisfied because he submitted evidence of discriminatory conduct to the school's human resources director and assistant superintendent which described "the nature of the claim," the time when it arose", "the place where it occurred," and "the manner in which it occurred." (Pl.'s Opp'n 41–42; *see also id.* 43.)

NYSHRL claims that "are brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in New York Education Law § 3813(1)." *Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276, 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) (alteration adopted) (citation omitted). That provision provides, in relevant part, that no "action or special proceeding" shall be "maintained against any school district, board of education," or officer of the same unless "a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months" of when the claim accrued. N.Y. Educ. Law § 3813(1); *see also Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *5 (S.D.N.Y. Sept. 28, 2022) (same). The failure to "'present a claim within the statutory time limitation or to notify the correct party is a fatal defect'" in any such action. *Id.* (emphasis omitted) (quoting *Parochial*

*Bus Sys., Inc. v. Bd. of Educ. of City of N.Y.*, 458 N.E.2d 1241, 1245 (N.Y. 1983)); *see also Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010) (explaining that compliance with Section 3813(1) is a "statutory condition precedent" to suit). "Moreover, plaintiffs must plead compliance with § 3813(1)'s requirements." *Nelson*, 2017 WL 1102668, at *3; *see also Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723, 2020 WL 3865119, at *4 (S.D.N.Y. July 9, 2020) ("Failure to plead compliance with a notice of claim requirement constitutes a defect warranting dismissal of a complaint on the ground that it fails to state a cause of action." (alteration adopted and quotation marks omitted)), *report and recommendation adopted*, 2020 WL 4383503 (S.D.N.Y. July 31, 2020); *cf. Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (explaining the "general rule that in a federal court, state notice-of-claim statutes apply to *state*-law claims," and that its pleading requirements are applicable in federal court as well).[4]

Plaintiff does not allege that he submitted a formal notice of claim, but instead argues that the letters he submitted to the school's human resources director and assistant superintendent were sufficient to give notice. (Pl.'s Opp'n 43.) He points to cases where this requirement was satisfied notwithstanding the lack of a formal notice of claim because plaintiffs submitted letters to the school district detailing their grievances and the basis for suit. *See Walsh v. Scarsdale*

[4] The Second Circuit has not explained whether this requirement—that even in a complaint brought in federal court, a plaintiff must plead compliance with the state's notice-of-claim statutes—survived the Supreme Court's recent decision in *Berk v. Choy*. 607 U.S. 187, 199 (2026) (holding a state law imposing heightened pleading requirements on medical malpractice claims did not apply in federal court because it conflicted with Rule 8, insofar as that state law sought to "determine[] what plaintiffs must present to the court about their claims at the outset of litigation"). Nevertheless, this Court is "bound by [circuit precedent], that is, unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision." *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003). Until then, this Court remains bound by the Second Circuit's decision in *Hardy*.

*Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2019) (finding notice of claim requirement satisfied where the plaintiff sent letter to the Assistant Superintendent which he then also sent to the school district's legal counsel); *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416, 2017 WL 2374363, at *9, *9 n.13 (S.D.N.Y. May 31, 2017) (finding notice sufficient where plaintiff sent district a letter containing formal complaints of discrimination), *aff'd*, 750 F. App'x 41 (2d Cir. 2018); *Melton v. Poughkeepsie City Sch. Dist.*, No. 16-CV-9701, 2017 WL 6502242, at *8 (S.D.N.Y. Dec. 18, 2017) (agreeing that notice "requirement is met by any document sufficiently formal and detailed for the *District* to investigate the claims" (emphasis added)).

Plaintiff's reliance on these cases is misplaced because, unlike here, those cases presented circumstances where the *district* was on notice of the claim and thus fit under "the rare and limited circumstance where [his letter] put[] the school district on notice of the precise claim alleged, [and] [wa]s served on the governing board of the district." *Sullivan*, 2016 WL 11673810, at *4 (quoting *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-0010, 2010 WL 3958430, at *4 (E.D.N.Y. Oct. 6, 2010)). Plaintiff has not alleged that either of his letters was served on the governing board of the district, and service on "a different arm of the district," *id.*, including human resources or the assistant superintendent, is not sufficient, *see Carter v. Syracuse City Sch. Dist.*, 850 F. App'x 22, 25 (2d Cir. 2021) (summary order) (finding notice insufficient when mailed to superintendent because "in actions against school districts, the statutory prerequisite of presenting notice of claim on the governing body is not satisfied by presentment to any other individual or body") (alterations adopted and quotation marks, emphasis and citation omitted); *Sullivan*, 2016 WL 11673810, at *4. Like in *Kirkland-Hudson*, Plaintiff has failed to serve the governing board of the district and thus did not satisfy

§ 3813(1)'s notice requirements. 2024 WL 4277940, at *8. Accordingly, his state law claims are dismissed.

## III. Conclusion

For the reasons set forth above, the Defendant's Motion To Dismiss is granted in part and denied in part. Count I ( Title VII Discrimination) and Count III (ADA Discrimination) are dismissed for failure to state a claim under Rule 12(b)(6). Count V (claiming age, sex, and disability discrimination under NYSHRL) and Count IX (NYSHRL Retaliation) are dismissed for failure to satisfy the notice requirements of New York State Education Law § 3813(1). Defendant's Motion To Dismiss is denied with respect to Count II (ADEA Discrimination), Count IV (ADA Hostile Work Environment), Count VI (Title VII Retaliation), Count VII (ADEA Retaliation), and Count VIII (ADA Retaliation). Defendant's Motion To Dismiss is denied with respect to Plaintiff's FMLA retaliation claim (Count X) but granted with respect to his FMLA interference claim (Count X). Plaintiff is granted leave to amend the complaint to cure the deficiency identified with respect to Count X within 30 days of this Opinion. The Clerk of Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 28 and 31.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge